Devin A. McRae, SBN 223239
 *dmcrae@earlysullivan.com*
Michael Smarinsky, SBN 82889
 *msmarinsky@earlysullivan.com*
EARLY SULLIVAN WRIGHT
 GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

Attorneys for Plaintiff
ONZA PARTNERS SL AND ONZA ENTERTAINMENT SL

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ONZA PARTNERS SL, a Spanish Sociedad Limitada, and ONZA ENTERTAINMENT SL, a Spanish Sociedad Limitada,<br><br>Plaintiffs,<br><br>vs.<br><br>SONY PICTURES ENTERTAINMENT INC., a Delaware corporation, SONY PICTURES TELEVISION INC., a Delaware corporation, ERIC KRIPKE, an individual, KRIPKE ENTERPRISES, a California corporation, NBCUNIVERSAL MEDIA, LLC, a Delaware limited liability company, SHAWN RYAN, an individual doing business as MIDDKID PRODUCTIONS, JOHN DAVIS, an individual, DAVIS ENTERTAINMENT COMPANY, a Nevada corporation, and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 2:16-cv-7269<br><br>**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT AND (2) BREACH OF IMPLIED CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |



Plaintiffs Onza Partners SL, a Spanish Sociedad Limitada, and Onza Entertainment SL, a Spanish Sociedad Limitada (collectively "**Onza**" or "**Plaintiffs**") allege as follows:

## FACTUAL BACKGROUND TO THIS LITIGATION

1.  This is a case about how Sony Pictures Entertainment Inc., a Delaware corporation ("**SPE**"), together with its affiliate Sony Pictures Television Inc., a Delaware corporation ("**SPT**") (SPE and SPT being, collectively, "**Sony**"), and writer/producer Eric Kripke ("**Eric**") and his loan out company, Kripke Enterprises, a California corporation ("**Kripke Enterprises**") (Eric and Kripke Enterprises being, collectively, "**Kripke**"), conspired to steal from Onza its copyrighted property and, in violation of that copyright and of their implied-in-fact contract with Onza, to create an infringing television series to be broadcast in the United States by NBCUniversal Media, LLC, a Delaware limited liability company ("**NBC**") on NBC's television network (the "**NBC Network**").  In so doing, Sony and Kripke have worked with Shawn Ryan (an individual doing business as Middkid Productions) (collectively, "**Ryan**")) and John Davis ("**John**", who, with his corporation Davis Entertainment Company, a Nevada corporation ("**Davis Entertainment**"), is, collectively, "**Davis**").

2.  Onza is the author of a copyrighted, proprietary television series format (the "**Format**") entitled "El Ministerio del Tiempo" (in English, "The Department of Time"), which Format was registered as registration number M-007130/2012 with the Spanish Copyright Office on October 24, 2012. The Format is the basis for a produced television series also entitled "El Ministerio del Tiempo," (the "Original Series"), which Original Series relates to the adventures of a three-person government team (consisting of one woman and two men) traveling through time to thwart undesired changes to past events.  The Original Series has, since February 2015, been broadcast in Spain by Corporación Radio Televisión Espanola, the national public broadcaster of Spain ("RTVE").  Due to its great success and international popularity, the Original Series has also been licensed for broadcast in

1
**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT AND (2) BREACH OF IMPLIED CONTRACT**

Brazil, Mexico, El Salvador and Uruguay; the Format itself has also been either licensed or optioned in China, France, Italy, Portugal, and other parts of Latin America. Onza is a beneficial copyright owner of the Format and the Original Series, as Onza and RTVE share certain commercial and economic rights relative thereto (among which is the right to license same worldwide and to split the revenue thus generated). Onza was therefore also interested in licensing the Format, and the Original Series, for the development and exploitation of an English language television series (to be broadcast in the United States) based thereon (an "**American Version**").

3. Accordingly, Onza's principal Gonzalo Sagardia ("**Sagardia**") in April 2015 took part in the MIPTV 2015 conference in Cannes, France, a major international marketplace for television and digital content. There, Onza's principals met with Roy Ashton ("**Ashton**"), a Partner (and head of the Television Literary Department and Packaging) with The Gersh Agency, Inc. ("**Gersh**"), a major talent agency in Beverly Hills, California. As Ashton and Gersh have many significant business relationships with television networks, studios, producers, writers and actors in the United States, Onza was looking to them to assist Onza in "packaging" (for United States exploitation) an American Version. Talent professionals like Ashton and Gersh often are the catalyst for the development of new television shows, using their business relationships to put deals together by connecting fresh concepts with the companies and creative people that can bring those concepts to the television screen.

4. On or about April 15, 2015, Sagardia discussed the Original Series with Ashton who, upon learning about it, asked if he could have for his review an English-subtitled DVD of the first episode of the Original Series (an "**Original Series DVD**"), along with a flyer describing the Original Series (an "**Original Series Flyer**"). Sagardia presented a single Original Series DVD and an Original Series Flyer to Ashton, on the understanding that (a) if Ashton liked the Original Series, he

and Gersh would use their United States contacts to assist Onza in putting together a deal for Onza's development and exhibition of an American Version, and (b) the Original Series DVD and Original Series Flyer would be used for no other purposes whatsoever. In particular, Ashton mentioned that the American television writers/producers Ben Edlund and Eric (who had, among other things, worked together on the United States hit television series "Supernatural") might be perfect as "showrunners"[1] for Onza's American Version. Solely for the purposes of soliciting United States entertainment industry players' (including potential showrunners and/or producing studios and/or television networks) interest in developing for Onza an American Version of the Original Series, Sagardia agreed that: (a) Ashton could discuss the Original Series with them, and (b) that they could view the Original Series DVD and the Original Series Flyer. Of course, as Gersh was a major American talent agency, it was understood by all concerned that any persons or entities being given access by Ashton or Gersh to the Original Series DVD, the Original Series Flyer, or the concepts behind the Format or the Original Series, would be given such access solely for the purpose of assisting Onza in developing and exploiting Onza's American Version. While precise financial terms relative to any American Version were to be worked out among Onza and the other parties brought into the deal by Gersh, no American Version was to be made without Onza's consent.

5. Ashton viewed the Original Series DVD, and, on April 27, 2015, emailed Sagardia that he thought it was great and would "love to work on this with you". Later on the same day, Ashton emailed Sagardia that "I have a really strong plan for this".

6. Sagardia responded that Onza was in the process of hiring Emiliano Calemzuk ("**Emiliano**") and his partner Raquel Esquivias ("**Raquel**") to represent

---

[1] A "showrunner" is the person tasked with the day-to-day operation of a television series, often combining the tasks of head writer, executive producer, and script editor.

3
**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT AND (2) BREACH OF IMPLIED CONTRACT**

Onza in negotiating any deals that Ashton/Gersh might bring to the table[2]. On June 5, 2015, Sagardia put Ashton in email contact with Emiliano and Raquel, and Ashton had several email communications with Raquel thereafter on that date.

7. On June 9, 2015, Ashton emailed to Raquel that Ben Edlund and Eric were the "names I mentioned" to Sagardia at MIPTV.

8. On July 17, 2015, Raquel emailed to Ashton that she was in the process of attempting to locate a studio to produce the American Version for Onza, using Ben Edlund and/or Eric. On that same date, Ashton emailed Raquel back that, if Onza wanted to develop its American Version with Ben Edlund and/or Eric, the studio involved would have to be Sony, as "Only Sony can do the scenario I was talking about because they have a deal with those writers [Ben Edlund and Eric]".

9. Plaintiffs are informed and believe, and on that basis allege, that Ashton discussed the Format and the Original Series with Ben Edlund, Eric, and Sony, and allowed Ben Edlund, Eric and Sony to view the Original Series DVD. Indeed, Ashton specifically informed Sagardia that Ashton knew that Ben Edlund had discussed the Original Series with Eric.

10. Raquel and Emiliano began negotiating with Sony on behalf of Onza relative to producing and distributing Onza's American Version. The Sony personnel they negotiated with were Laine Kline (a practicing attorney and Sony's Executive Vice President, Business Affairs for International Production) and Sanford Panitch (Sony's President of International Film & Television). These negotiations continued throughout July and, on July 27, 2015, Sony proposed that it would produce Onza's American Version on the following terms:

> Initial 18 month option: $6,000-applicable against the Purchase Price; Additional 18 month option extension: $6,000-non-applicable; Purchase Price: $60,000; Contingent Compensation: 2.5% of MAGR (Standard Sony Definition); Episodic Royalty: $3000 per episode for U.S.

---

[2] In fact, an agreement with Emiliano and Raquel was executed by Onza on or about May 6, 2015.

network/ $2400 per episode for non-network; Series sale bonus: $15,000 for U.S. network/ $12,000 for cable (25/12 episodes- minimum of 6); Pilot EP fee: $20,000 U.S. network/ $16,000 non-network; Series EP fee: $15,000 U.S. network/ $12,000 non-network w/ 3% bumps each season; EP credit (locked for life); Right to use existing screenplay material: Story only- $5,000; Teleplay- $10,000; Sony shall have the right to do subsequent productions and shall pay 50% for generic spinoffs and 25% for planted spinoffs; Holdback of U.S. exploitation of original series and format licensing in any English language territory.

11. Emiliano responded for Onza to Sony's proposal with the following counter-proposal:

Option 10.000$ + 10.000$ (12 meses); Purchase price aceptamos su propuesta de 60.000$; Script fee Broadcast: 15.000$   Script fee Cable:10.000$; Story fee Broadcast: 10.000$   Story fee Cable: 7.000$; Producing Fee Broadcast 20.000$   Producing fee cable: 15.000$; Royalty broadcast 6.000$   Royalty cable 4.000$; Back end 7,5%; Series production bonus: aceptamos su propuesta broadcaster 15.000$, cable 12.000$; Pilot fee broadcast aceptamos su propuesta 20.000$   Pilot fee cable 16.000$; EP credit (locked for life).... ; Customary source credit (subject to each broadcaster's credit policies and any applicable guild's restrictions).; 1.- **Sony shall have the right to do subsequent productions and shall pay 50% for generic spinoffs and 25% for planted spinoffs; 2.- Holdback of U.S. exploitation of original series and format licensing in any English language territory.**

12. On August 26, 2015, the website "Deadline.com" published a press release (the "**Deadline Release**") announcing that Eric and Ryan, who were "both under overall deals at Sony", were producing a television pilot show then entitled "Time" (and now entitled "Timeless") (the "**Infringing Television Show**") with Sony and the Sony-based Davis for NBC.

13. According to the Deadline Release, the Infringing Television Show was to be about a trio "traveling through time to battle unknown criminals in order to protect history as we know it". Also according to said Deadline Release, for some time "Kripke and Davis Entertainment [had] thought about exploring the arena of a big-scale, adventure time-travel drama". *Indeed. At least since Ashton and Gersh*

1 *allowed Kripke to view the Original Series DVD and Kripke had discussed the*
2 *Original Series with Ben Edlund*.

3    14.    Also according to the Deadline Release, Eric and Davis "reached out" to
4 Ryan, who was also working at Sony, and "***within weeks*** crafted [stole] the storyline
5 and characters for *Time*" (emphasis added). Obviously, it does not take a lot of time
6 to put together a "new" and creative a product ripped off from someone else.

7    15.    ***Oddly, at the moment of the August 26, 2015 publication of the***
8 ***Deadline Release, Sony abruptly and without any warning terminated all***
9 ***negotiations relative to Onza's American Version***.

10    16.    Onza, through its attorney David Tenzer, attempted repeatedly (through
11 March 31, 2016) to contact Sony to discuss Sony's obvious theft of Onza's property.
12 When Mr. Tenzer first wrote to Sony's Executive Vice President (Business Affairs)
13 Jeffrey Frost, he was referred to Sony's Executive Vice President (U.S. Legal
14 Affairs) Gregory K. Boone ("**Boone**"). Although initially professing a willingness to
15 look into the aforementioned matter and attempt to resolve it with Onza, Boone
16 thereafter kept cancelling and/or postponing discussions with Mr. Tenzer. Finally, in
17 response to Mr. Tenzer's March 31, 2016 email asking Boone for his thoughts on
18 how to proceed, Boone brusquely responded "I've doubled back internally and. . .
19 [w]e don't feel that our project violates your client's rights".

20    17.    On May 13, 2016, "Variety" ran a banner headline reading "NBC Orders
21 Drama Series 'Timeless' from Eric Kripke and Shawn Ryan". According to this
22 article, NBC had greenlighted (ordered for a full season's worth of episodes) the
23 Infringing Television Show, as the "action-adventure project ***has been at the top of***
24 ***NBC's list*** all throughout pilot season" (emphasis added). According to the article,
25 the Infringing Television Show "hail"ed from Eric, Ryan, and "the producers of 'The
26 Blacklist'" (Davis); the article further listed the producers of the Infringing
27 Television Show as Kripke, Ryan (including his associate Marney Hochman at the
28 so-called Middkid Productions), Davis, John Fox (the President of Davis

6
**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT AND (2) BREACH OF IMPLIED CONTRACT**

1  Entertainment), SPT, and director Neil Marshall.

2      18.    Plaintiffs are informed and believe that the Infringing Television Show
3  will be broadcast on the NBC Network on October 3, 2016.

4      19.    According to the aforementioned May 13, 2016 "Variety" article, NBC's
5  description of the Infringing Television Show asks the question: "Can this
6  handpicked team uncover the mystery behind it all and end his destruction before it's
7  too late?" Plaintiffs ask this Court the same question.

## THE PARTIES

9      20.    Plaintiffs Onza Partners SL and Onza Entertainment SL are, and at all
10 times herein mentioned were, Spanish Sociedads Limitada with their principal place
11 of business in Madrid, Spain. Plaintiffs Onza Partners SL and Onza Entertainment SL
12 are beneficial owners of the Spanish copyright in the Format and each episode of the
13 Original Series.

14     21.    Plaintiffs are informed and believe, and on that basis allege, that
15 Defendant SPE is, and at all times herein mentioned was, a Delaware corporation
16 with its principal place of business in Culver City, California, and is qualified to do
17 business and is doing business in the State of California. Plaintiffs are further
18 informed and believe, and on that basis allege, that Defendant SPE is involved in the
19 production, development, and distribution of the Infringing Television Show.

20     22.    Plaintiffs are informed and believe, and on that basis allege, that
21 Defendant SPT is, and at all times herein mentioned was, a Delaware corporation
22 with its principal place of business in Culver City, California, and is qualified to do
23 business and is doing business in the State of California. Plaintiffs are further
24 informed and believe, and on that basis allege, that Defendant SPT is involved in the
25 production, development, and distribution of the Infringing Television Show.

26     23.    Plaintiffs are informed and believe, and on that basis allege, that
27 Defendant Eric is, and at all times herein mentioned was, an individual citizen of the
28 United States residing in the County of Los Angeles, California. Plaintiffs are further

informed and believe, and on that basis allege, that Defendant Eric is involved in the production, development, and distribution of the Infringing Television Show.

24. Plaintiffs are informed and believe, and on that basis allege, that Defendant Kripke Enterprises is, and at all times herein mentioned was, a California corporation with its principal place of business in Beverly Hills, California, and is doing business in the State of California. Plaintiffs are further informed and believe, and on that basis allege, that Defendant Kripke Enterprises is involved in the production, development, and distribution of the Infringing Television Show.

25. Plaintiffs are informed and believe, and on that basis allege, that Defendant NBC is, and at all times herein mentioned was, a Delaware limited liability company with its principal place of business in New York, New York, and is qualified to do business and is doing business in the State of California. Plaintiffs are further informed and believe, and on that basis allege, that Defendant NBC is involved in the production, development, and distribution of the Infringing Television Show.

26. Plaintiffs are informed and believe, and on that basis allege, that Defendant Ryan is, and at all times herein mentioned was, an individual citizen of the United States residing in the County of Los Angeles, California and doing business as Middkid Productions. Plaintiffs are further informed and believe, and on that basis allege, that Defendant Ryan is involved in the production, development, and distribution of the Infringing Television Show.

27. Plaintiffs are informed and believe, and on that basis allege, that Defendant John is, and at all times herein mentioned was, an individual citizen of the United States residing in the County of Los Angeles, California. Plaintiffs are further informed and believe, and on that basis allege, that Defendant John is involved in the production, development, and distribution of the Infringing Television Show.

28. Plaintiffs are informed and believe, and on that basis allege, that Defendant Davis Entertainment is, and at all times herein mentioned was, a Nevada

corporation with its principal place of business in Culver City, California, and is doing business in the State of California. Plaintiffs are further informed and believe, and on that basis allege, that Defendant Davis Entertainment is involved in the production, development, and distribution of the Infringing Television Show.

29. Plaintiffs do not know the true names and capacities of those Defendants sued as DOES 1 through 100, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when such are ascertained. Plaintiffs are informed and believe, and on that basis allege, that each of the Defendants sued herein as DOES 1 through 100, inclusive, is in some manner legally responsible for the wrongful acts set forth herein. Defendants SPE, SPT, Eric, Kripke Enterprises, NBC, Ryan, John, Davis Entertainment, and DOES 1 through 100 are referred to herein collectively as "Defendants" and individually as a "Defendant".

## JURISDICTION AND VENUE

30. This Complaint alleges copyright infringement arising under the Copyright Act, 17 U.S.C. §§ 101, *et seq*. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. This Court has subject matter jurisdiction pursuant to 17 U.S.C. § 501, and 28 U.S.C. §§ 1331, 1332(a), 1338(a) and 1367.

31. Venue for this action properly lies in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants reside or can be found in this District and a substantial part of the events or omissions giving rise to the claims set forth herein arose in this District.

## FIRST CLAIM FOR RELIEF

**(For Copyright Infringement, Against All Defendants)**

32. Plaintiffs hereby incorporate by reference each of the allegations made in paragraphs 1 through 31 above, inclusive, as though fully set forth herein.

33. Plaintiffs are beneficial owners of the copyrights in the United States for

the Format and the Original Series. The Format and the Original Series were first published in Spain, which is a member of the Berne Convention. Under 17 U.S.C. § 104(b)(2), Plaintiffs are entitled to protection of the Format and the Original Series under the Copyright Act. Because each episode of the Original Series first aired in Spain, under 17 U.S.C. § 411(a), the United States registration of copyrights relative thereto is not a prerequisite to Plaintiffs bringing this action for copyright infringement.

34. Plaintiffs are informed and believe, and on that basis allege, that Defendants copied the Format and the Original Series and the protectable expression contained therein, including, but not limited to, the expression of concepts, ideas, plots, themes, dialogue, mood, setting, pace, and characters contained therein.

35. There are numerous similarities between the Format/Original Series, on the one hand, and the Infringing Television Show, on the other hand, including, but not limited to:

(a) Both works center on a national government's secret efforts to utilize time travel to thwart undesired changes to past events, to avoid unpredictable changes in the present, and thus to safeguard the present, the nation, and the course of history;

(b) Both works conduct their time travel operations via a three-person team (a "patrol unit") consisting of one woman and two men;

(c) In both works, the woman team member has an academic background (with unorthodox elements) and knowledge of historical accuracy helpful—or crucial—to carrying out the given missions;

(d) As a result, the woman tends to be the "brains" of the trio;

(e) Both works include the suspected element of an antagonist from the team's present;

(f) In both works, it is possible that the suspected antagonist is, in fact, a "double agent"; in other words, there is always the possibility that



**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT AND (2) BREACH OF IMPLIED CONTRACT**

antagonists are not what they appear to be at first glance;

(g) In both works, the team members are recruited civilians (i.e., they are not currently professional government agents trained for the depicted time travel missions);

(h) In both works, the team members are facing varying degree of life crises;

(i) In both works, there are hints that there are covert conspiracies within the government organization;

(j) In both works, a team member has lost his wife, and his visit(s) to the past either remind him of the loss, or suggest that he should try to avert it (contrary to the stated constraints of time travel not to change the past);

(k) In both works, a male team member is a soldier who can provide military expertise and "muscle" and who demonstrates firearms skill and expertise;

(l) Both works include a character who is both ambiguous as to his/her intentions, loyalties, and functions, but who also serves to suggest to the team that the government organization employing the team is not as benevolent (or benign) as it may seem;

(m) Both works include characters whose motivations are mixed between changing the future to save someone specific, and to do so for their own emotional well-being;

(n) In both works, a seeming antagonist warns the brainy woman team member that the governmental agency for which she is working has mixed, darker motives, and that, to prove the antagonist knows what he/she is talking about, reveals facts about her life, family, past, etc.;

(o) In both works, the brainy woman team member learns about her as-yet unknown alternative future by seeing a family photograph;

(p) In both works, the "ambiguous" antagonist storms in with a group of gunmen, kills some personnel, and overtakes the means of time-travel for his own benefit; the plot devices and active characters in this similarity are functionally identical, and they have similar conflicts with the governmental time travel organization;

(q) Both works use the device of a revealed journal that allows the "brainy" woman to know about her time travels; and

(r) The pilot episodes to both works are structured similarly, in that: (i) the characters are introduced in their civilian, non-team environments; (ii) the time travel mechanism is revealed; (iii) the government organization is revealed; (iv) the "mission" is described and commenced; (v) the travel back into time is completed, and the characters are in an earlier era to accomplish a goal; (vi) there are conflicts and difficulties in resolving the mission; (vii) upon returning to the present, ambiguities are suspected; and (viii) in the present, a hint of a future conflict or mission is encountered.

36. Plaintiffs are informed and believe, and on that basis allege, that Defendants knowingly and willfully copied the Format and the Original Series and the protectable expression contained therein, including, but not limited to, the expression of concepts, ideas, plots, themes, dialogue, mood, setting, pace, and characters contained therein. Plaintiffs are informed and believe, and on that basis allege, that Defendants knowingly and willfully copied the original artistic and creative choices that comprise Plaintiffs' expression of the premise and the elements of the Format and the Original Series.

37. Plaintiffs are informed and believe that Defendants had access to the material contained in the Format and the Original Series through Ashton and Gersh. Defendant Sony unquestionably believed that said material (and the concepts underlying said material) had value to Sony, and that Onza had to be compensated for

such value if said material and/or concepts were used by Sony. *Indeed, until the very moment of the publication of the Deadline Release announcing the Defendants' production and distribution of the Infringing Television Show, Defendant Sony had been negotiating with Plaintiffs' agents Emiliano and Raquel to acquire from Plaintiffs' the right to produce and distribute an American Version of the Format and Original Series based on said material*.

38. The Infringing Television Show is substantially, indeed strikingly, similar to the Format and the Original Series.

39. The total concept and feel of the Infringing Television Show is substantially, indeed strikingly, similar to the total concept and feel of Plaintiffs' Format and Original Series.

40. In all matters alleged in this Complaint, Defendants, and each of them, acted without authorization of any kind from Plaintiffs or RTVE. Defendants' actions constituted and continue to constitute copyright infringement in violation of Plaintiffs' exclusive rights under the Copyright Act.

41. Due to their knowledge, relationships, and joint and concerted conduct, each Defendant is jointly and severally liable for the copyright infringements of the other Defendants herein.

42. As a direct and proximate result of Defendants' infringing use of the Plaintiffs' copyrighted material in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 106, Plaintiffs have suffered, and will continue to suffer, severe injuries and damages, and are entitled to those damages permitted by federal copyright law, including, but not limited to, compensatory damages and the profits derived by Defendants as a result of their infringing acts, in an amount to be determined according to proof at trial, as well as their attorneys' fees and other costs.

43. Plaintiffs have suffered, and will continue to suffer, irreparable injury as a direct and proximate result of Defendants' infringing conduct, some substantial portion of which cannot be compensated by money damages if such wrongful

conduct is permitted to continue. Accordingly, Plaintiffs request that Defendants be enjoined from any further infringing acts.

## SECOND CLAIM FOR RELIEF

### (For Breach of Implied Contract, Against Sony and Kripke)

44. Plaintiffs hereby incorporate by reference each of the allegations made in paragraphs 1 through 43 above, inclusive, as though fully set forth herein.

45. In the entertainment industry, it is expected, understood and customary that when an original creative work is circulated for consideration by industry persons or companies, a recipient who desires to make use of it must reach a compensation agreement with the creator. This expectation of compensation is generally shared by both the submitting and receiving parties. Absent an express agreement, the use of such submitted material creates an implied contract under which the party who uses the material is required to compensate the creator.

46. Plaintiffs desired that there be developed, produced and distributed in the United States an American Version of their Original Series, as it had proven extremely popular in Spain. At MIPTV 2015, Plaintiffs' principal Sagardia met with Gersh's executive Ashton, and discussed with him his (and Gersh's) potential role in helping them to locate United States entertainment industry players who could help them develop, produce and distribute the American Version of their Original Series. At that time, Sagardia gave Ashton the Original Series Flyer and the Original Series DVD. The understanding was that, if Ashton liked the Original Series, he and Gersh would use their United States contacts to assist Plaintiffs in putting together a deal for Plaintiffs' development and exhibition of an American Version, and that the Original Series DVD and Original Series Flyer would be used for no other purposes whatsoever.

47. Upon viewing the Original Series DVD and the Original Series Flyer, Ashton decided that he and Gersh wanted to be part of Plaintiffs' "setting up" the development, production and distribution of an American Version of the Original

Series. Ashton informed Plaintiffs that Kripke would be a choice "showrunner" for this American Version of the Original Series, and that Kripke could be involved in this project only if it was developed, produced and distributed through Sony. In furtherance of so "setting up" the development, production and distribution of an American Version of the Original Series, Plaintiffs are informed and believe that Gersh (through Ashton): discussed the Format and the Original Series with Ben Edlund, Kripke, and Sony; and allowed Ben Edlund, Kripke and Sony to view the Original Series DVD. Plaintiffs are also informed and believe that Gersh (through Ashton) enabled Ben Edlund to discuss the Original Series with Kripke.

48. Notwithstanding the fact that the Original Series had become immediately popular in Spain, the ideas underlying, and contained in, the Format and the Original Series were not known to the American-based Kripke (who was to be the key person in bringing to life the American Version of the Original Series) or Sony, and, indeed, were not set forth in the English language. Ashton's providing Kripke and Sony access to the ideas underlying the Format and the Original Series (including by way of the English-subtitled Original Series DVD) was therefore of extreme importance to Kripke's being able to develop the American Version through Sony, and, as is typical in the American entertainment industry, the understanding was that Plaintiffs' granting (through Ashton and Gersh) Kripke and Sony such access was conditioned upon Kripke's and Sony's implied in fact promise not to make any use whatsoever of the ideas underlying (or contained in) the Format or the Original Series *unless a full and formal agreement relative thereto was first executed with Plaintiffs. In full recognition of this implied in fact promise, Sony commenced negotiations with Plaintiffs relative to the development, production and distribution of the American Version of Plaintiffs' Original Series*.

49. When Sony broke off negotiations with Plaintiffs, and, together with Kripke, agreed on their own to develop, produce and distribute the Infringing Television Show, they breached the implied contract between themselves and

15
**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT AND (2) BREACH OF IMPLIED CONTRACT**

Plaintiffs.

50. Each of Sony and Kripke is jointly and severally liable to Plaintiffs for breach of implied contract, in an amount to be determined according to proof at trial.

## **PRAYER**

Wherefore, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

1. On the first claim for relief, that judgment be entered for Plaintiffs and against all Defendants, jointly and severally, for those damages permitted by federal copyright law, including, but not limited to, compensatory damages and the profits derived by Defendants as a result of their infringing acts, in an amount to be determined according to proof at trial, as well as Plaintiffs' attorneys' fees and other costs of suit;

2. On the first claim for relief, that preliminary and permanent injunctive relief be awarded to Plaintiffs against all Defendants prohibiting: (a) any unauthorized copying or other use or exploitation of the Format and/or the Original Series (including also the Original Series DVD), by Defendants, their agents, servants, employees, attorneys, or anyone acting in concert with any of them or under purported rights from any of them, in violation of Plaintiffs' copyright rights; and (b) without limitation of the foregoing, the production and/or distribution (in any form or medium whatsoever) of any episodes of the Infringing Television Show (including also the pilot episode thereof);

3. On the claim for relief, that there be awarded to Plaintiffs against all Defendants, such other and further relief as the Court deems just, equitable and proper;

4. On the second claim for relief, that judgment be entered for Plaintiffs and against Sony and Kripke, jointly and severally, for compensatory damages in an amount to be determined according to proof at trial; and

5. On the second claim for relief, that there be awarded to Plaintiffs against

Sony and Kripke, such other and further relief as the Court deems just, equitable and proper.

                                  Respectfully submitted,

Dated: September 27, 2016     EARLY SULLIVAN WRIGHT
                                          GIZER & McRAE LLP


By:  */s/ Devin A. McRae*
     DEVIN A. McRAE
     Attorneys for Plaintiffs
     ONZA PARTNERS SL AND ONZA
     ENTERTAINMENT SL



17

**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT AND (2) BREACH OF IMPLIED CONTRACT**

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: September 27, 2016

EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP

By: */s/ Devin A. McRae*
DEVIN A. McRAE
Attorneys for Plaintiffs
ONZA PARTNERS SL AND ONZA ENTERTAINMENT SL



18
**COMPLAINT FOR (1) COPYRIGHT INFRINGEMENT AND (2) BREACH OF IMPLIED CONTRACT**