UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 16-07269-SVW-FFM | Date | February 15, 2017 |
| Title | *Onza Partners SL v. Sony Pictures Entertainment Inc., et al.* | | |

| | |
|---|---|
| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |

| | |
|---|---|
| Paul M. Cruz | N/A |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** IN CHAMBERS ORDER DENYING MOTION TO DISMISS [20]

## I. INTRODUCTION

Plaintiff Onza Partners SL ("Onza" or "Plaintiff") filed this suit against Defendants Sony Pictures Entertainment Inc. ("Sony" or "Defendant"), and others (collectively "Defendants"), alleging copyright infringement and breach of implied contract. Dkt. 1. Sony moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the allegations do not plead plausible facts that the TV shows at issue are extrinsically similar in protected expression, and that Plaintiff does not have an implied contract claim due to the "blurt-out" defense. *See* dkt. 20. For the following reasons, the Court DENIES this motion.

## II. BACKGROUND FACTS

Plaintiff is the copyright holder of the TV show "El Ministerio del Tiempo" ("The Department of Time") which began airing in Spain in February 2015. Compl. ¶ 2. Defendants are the producers, TV studio, and other related entities that created the show "Timeless" which aired in the United States in 2016. *Id.* ¶ 21-29. Both shows are about a trio of one female and two males that are recruited by the government to travel through time and complete missions to protect the timeline. *See, generally*, *id.*

According to the complaint, Plaintiff began licensing negotiations with Defendants sometime around July 2015. *Id.* ¶ 10. Plaintiff alleges that Eric Kripke and Ben Edlund were aware of the show and,

:

Initials of Preparer PMC

on information and belief, viewed a copy of "The Department of Time". *Id.* ¶ 9. Sony proposed a licensing agreement. *Id.* Plaintiff made a counteroffer. *Id.* ¶ 11. Then, on August 26, 2015, "Deadline.com" published a press release that Sony was producing a show called "Time" (later "Timeless"). *Id.* ¶ 12. At the same time, Sony stopped negotiations with Plaintiff and never responded to their counteroffer. *Id.* ¶ 15. Defendants Eric Kripke and Shawn Ryan are the producers of "Timeless". *Id.* ¶ 17.

## III. LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. Proc. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## IV. ANALYSIS

Sony first challenges the sufficiency of Plaintiff's copyright infringement claim, specifically arguing that "Timeless" is not substantially similar to any protected expression in "The Department of Time. Sony then challenges the sufficiency of Plaintiff's implied contract claim under the "blurt out" defense.

:

Initials of Preparer PMC

**A. Copyright Infringement**

To prevail on a claim for copyright infringement, a plaintiff must prove three essential elements: (1) plaintiff's ownership of a valid copyright, (2) defendant's access to the copyrighted work, and (3) "substantial similarity" between plaintiffs copyrighted work and defendant's allegedly infringing work. *See Funky Films, Inc. v. Time Warner Entertainment Co., LP.*, 462 F.3d 1072, 1076 (9th Cir. 2006); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9tl1 Cir. 2000); *Sid and Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir. 1977). Because each of the three elements must be established in order to prevail, the inability to establish any one element can be fatal.

For purposes of this motion, Sony only challenges the "substantial similarity" between the works. To determine whether two works are substantially similar, the Ninth Circuit applies a two-part test consisting of intrinsic and extrinsic components. *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003). The extrinsic test involves an objective comparison of the two works. The Court must consider "whether [the works] share a similarity of ideas and expression as measured by external, objective criteria." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). The Court notes that very few cases dismiss a copyright claim based on substantial similarity at the motion to dismiss phase. The majority of cases cited by both parties considered the issue at the summary judgment phase, though even summary judgment on substantial similarity is disfavored. *See Funky Films, Inc.*, 462 F.3d at 1076 (citing *Berkic v. Crighton*, 761 F.2d 1289, 1292 (9th Cir. 1985).

Plaintiffs argue, and Defendants do not dispute, that a court must examine on a motion to dismiss the entirety of protected work and the allegedly infringing work.[1] Plaintiff largely relies on *Christianson v. West. Pub. Co.*, 149 F. 3d 449, 203 (9th Cir. 1945) for the proposition that: "There is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." The Court does not find that this statement, or the litany of cases cite by Plaintiff [dkt. 27 at 7 n. 7], affirmatively establish that a court cannot dismiss a case on 12(b)(6) grounds based on substantial similarity without considering the entirety of all works at issue. Instead, these cases stand for an inverse proposition, that the Court *may* dismiss a case on 12(b)(6) grounds *if* it did indeed consider all works at issue. In other words, evaluating all the works at issue may be sufficient, but not necessary, for determining substantial

---

[1] Instead of disputing this principle, Defendants argue that the pilot episodes can sufficiently satisfy the requirement by revealing the "Format" of the two works.

______ : ______

Initials of Preparer PMC

similarity at the 12(b)(6) phase. The Court does agree with Plaintiff, however, that "[n]ot one of the cases" has determined a lack of substantial similarity without reviewing all works at issue "over the plaintiff's objection," *see* dkt. 27 at 7, and this Court will not be the first. In this case, regardless of whether *Christianson* is dispositive, an examination of more than just the pilots is required.[2]

To try and work around this issue, Defendants persistently misconstrue Plaintiff's complaint in order to argue a comparison of the pilot episodes is enough. For example, Defendants argue that: "Plaintiffs' argument, Opp., at 12:13 – 13:4-10, that Plaintiffs need to take discovery to show that **the two pilots are substantially similar** is mistaken." Dkt. 28, Reply, at 8 (emphasis added). Plaintiff did not make such an argument, but rather have consistently argued that a comparison of the pilots is not sufficient. Even in Defendants' conclusion they "respectfully request the Court to dismiss Plaintiffs' claims for copyright infringement **against the pilot episode** of 'Timeless'". *Id.* at 12 (emphasis added). Despite Defendants' objections and strained reading of the complaint, the face of the complaint puts more than just the pilots at issue.

The Court feels this issue is better suited for summary judgement so that Plaintiff has a chance to focus this Court's inquiry to the protected expression in "The Department of Time" and the alleged infringing expression in "Timeless".

### B. Implied Contract

Defendants argue that *Quirk v. Cony Pictures Entertainment Inc.*, 2013 WL 1345075 (N.D. Cal. Apr. 2, 2013) provides Defendants with a "blurt out" defense to Plaintiff's implied contract claim. *Quirk* does no such thing. In *Quirk*, plaintiff Joe Quirk published a novel titled *Ultimate Rush* about rollerblading package delivery personnel who became entangled with a criminal plot. *See id.* at *1. Plaintiff approached Warner Brothers to make a movie about the novel. *Id.* Warner Brothers commissioned two separate screenplays to be written from the book, but ultimately did not make a movie based on the book. *Id.* Several years later, Plaintiff discovered that *a different studio* made a movie called *Premium Rush* about a bicycle messenger that also gets into a perilous situation. *Id.* Plaintiff did not allege that the defendant got the idea for their movie from discussions and negotiations with *plaintiff*, instead his "theory [] rests solely on the allegation that defendants obtained possession of the Warner Brothers scripts and the novel through

[2] Even Plaintiff's "illustrative" list of similarities in the complaint goes beyond merely a comparison of the pilots. *See* compl. ¶ 35.

[California Artists Agency].” *Id.* at n. 6. The court found that “a ‘bilateral understanding of payment’ is critical, because it ‘constitutes an additional element that transforms a claim from one asserting a right exclusively protected by federal copyright law, to a contractual claim that is not preempted by copyright law.’” *Id.* at *10 (citing *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 976-977 (9th Cir. 2011)). The *Quirk* court found there was no such bilateral understanding of payment. *Quirk*, 2013 WL 1345075 at *11.[3]

Defendants rely on the following language from *Quirk* for their motion to dismiss:

> The idea man who blurts out his idea without having first made his bargain has no one but himself to blame for the loss of his bargaining power. The law will not in any event, from demands stated subsequent to the unconditioned disclosure of an abstract idea, imply a promise to pay for the idea, for its use, or for its previous disclosure.

*Id.* (citing *Desny v. Wilder*, 46 Cal.2d 715, 739 (1956)). However, this case is distinguishable from *Quirk* and the above quote. Plaintiff in this case, as in *Quirk*, is not free to sue just anyone they believe copied their work under an implied contract theory—this would only be the province of copyright law. Instead, Plaintiff in this case, unlike *Quirk*, alleges it was in contractual negotiations with Defendants *specifically*, which proceeded to such a point that a licensing offer *was made by Defendants*. Plaintiff rejected this offer but Defendants, according to the well-pleaded facts of the complaint which the Court accepts as true, took Plaintiff's idea anyway without paying compensation. Thus, if Defendants made “Timeless” without any communication with Plaintiff it may be said that Plaintiff “blurted out” their idea and therefore are only protected by copyright. *See Quirk*, 2013 WL 1345075 at *11 (“Quirk has admitted that if defendants worked from a copy of his novel they purchased on the open market, he would have no viable *Desny* claim.”). Here, however, Plaintiff came to Defendants with the specific idea to make an American recreation of the show, and began bargaining a contract for that idea. Plaintiff also suggested that Ben Edlund and Eric Kripke specifically would be well-suited as showrunners. *See* compl. ¶ 4. These well-pleaded facts state a plausible claim for an implied contract.[4]

---

[3] Though even in *Quirk* plaintiff made it past the motion to dismiss phase because “Quirk had speculated as to a large number of possible means of transmission of his work to defendants” that “might” have supported a “bilateral expectation of payment.” *Quirk*, 2013 WL 1345075 at *10. Plaintiff in this case alleges significantly more than “speculation” of how Defendants received Plaintiffs work (Plaintiff handed it to them in negotiations) and further alleges an *actual offer of payment* by Defendants, which necessarily meets the standard of “bilateral expectation of payment.”

[4] These extra facts further make this case more analogous to *Blaustein v. Burton*, 9 Cal. App. 3d 161 (1970) than to *Quirk*. In

## V. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants motion to dismiss.

*Blaustein*, plaintiff proposed a modern adaptation of *Taming of the Shrew* and specifically recommended Richard Burton and Elizabeth Taylor as the stars and Franco Zefrelli as director. *Blaustein*, 9 Cal. App. 3d at 167. After substantial talks with Burton's agent, the defendants eventually made the movie with Burton, Taylor and Zefrelli, but did not compensate plaintiff for the idea. *Id.* at 172. Certainly Shakespeare "blurted out" the ideas underlying the Taming of the Shrew hundreds of years before the events in *Blaustein*, but it was *plaintiff's* idea to make a modern version with specific people involved. Likewise, even if Plaintiff in this case "blurted out" the ideas underlying "The Ministry of Time", they approached Defendants with the specific idea to make an American adaptation with Kripke involved.

_____ : _____

Initials of Preparer PMC